**Frank SAVINO, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**COMPUTER CREDIT, INC., Defendant.**

**No. CV 95–4446(ADS).**

United States District Court, E.D. New York.

Jan. 10, 1998.

Law Offices of Scott N. Gelfand, New York, NY, for Plaintiff.

Robert L. Dougherty, Garden City, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises from the claims of the plaintiff, Frank Savino ("Savino" or the "plaintiff"), that the defendant, Computer Credit, Inc. ("CCI" or the "defendant"), acted in violation of the Fair Debt Collection Practices Act. ("FDCPA" or the "Act"), 15 U.S.C. § 1692, et seq., in its capacity as a collection agency, by mailing letters which contain language contrary to the statute's requirements. Presently before the Court are the following motions: (1) the defendant's motion pursuant to Fed.R.Civ.P. 11 requesting the imposition of sanctions and attorney's fees against the plaintiff and his attorney; and (2) the plaintiff's motion pursuant to 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(3) for the award of statutory damages "in the Court's discretion, up to a maximum amount of $1,000.00," attorney's fees in the amount of $38,948.75, and related costs in the amount of $316.74.

## I. BACKGROUND

The plaintiff is a resident of Hauppauge, New York. The defendant is a debt collection agency with its principal place of business in Winston–Salem, North Carolina. The chro-

nology of the plaintiff's complaint, which this Court detailed in its decision of June 9, 1997, and aptly characterized as "bizarre," warrants repetition here. *See Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 354 (1997).

### A. The Complaints and the Plaintiff's Deposition Testimony

According to the original complaint, dated October 22, 1995, the plaintiff received a letter from the defendant dated August 28, 1995, the purpose of which was to collect an alleged debt of $153.00 owed to North Shore Hospital. In this pleading Savino alleged that this August 28, 1995 letter was the *"first and only letter"* that he received with respect to the debt. Compl. ¶ 8 (emphasis in original). The complaint continued by claiming that this letter failed to advise the plaintiff of "his right to validate and dispute the alleged debt" within 30 days and that CCI applied "false, deceptive and misleading means in connection with the collection" of the alleged debt, all in violation of the FDCPA. Compl. ¶¶ 9, 10. In addition, Savino asserted that he is acting on behalf of a class of similarly situated consumers whose rights have been violated.

By notice of motion dated August 12, 1996, the plaintiff moved for leave to file an amended complaint. According to the moving papers, after this action was commenced, plaintiff's counsel was advised that his client had been sent a prior letter by CCI dated August 14, 1995 with regard to the aforementioned debt. Based on this representation, and the Second Circuit decision in *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2d Cir.1996), a case which outlined the parameters of FDCPA violations, the plaintiff decided that it would be appropriate to file an amended complaint. Initially Savino attempted to obtain the defendant's consent to file the amended pleading. CCI refused. Accordingly, the plaintiff filed the appropriate motion pursuant to Fed.R.Civ.P. 15(a).

The only substantive difference between the original and proposed amended complaint was that in addition to asserting that the August 28, 1995 letter was the first correspondence received, Savino alleged that, "[u]pon information and belief, CCI mailed an earlier letter to Savino, dated August 14, 1995, which was the first communication by CCI to Savino, or at least, CCI's first letter to Savino." Am. Compl. ¶ 10. The proposed amended complaint continued by claiming that while this letter did contain the required 30 day debt validation notice, it nevertheless violated the FDCPA "by containing language that overshadows, contradicts or is otherwise inconsistent with Savino's right to a 30 day statutory period in which to validate and [sic] dispute the alleged debt ...." Am. Compl. ¶ 11.

By order dated September 18, 1996, this Court referred the motion for leave to file an amended complaint to United States Magistrate Judge Arlene R. Lindsay to render a decision. By memorandum order dated November 7, 1996, Judge Lindsay granted the plaintiff's motion. The defendant did not file any objections to this order and the proposed amended complaint was deemed filed. On November 13, 1996, at a conference before Judge Lindsay, the plaintiff discontinued his claim based on the August 28, 1995 letter.

At the plaintiff's deposition on February 20, 1997, however, Savino contradicted his prior representations and claimed that *he did* receive the August 14, 1995 letter:

Mr. Dougherty [Defense Counsel]:

Turning to the subject of the lawsuit that you filed against Computer Credit, Inc., I am going to show you a letter dated August 14, 1995—

\* \* \*

Have you reviewed it?

Plaintiff: Yes.

Q Have you seen this document before or a copy of it?

A I believe, yes.

Q When was the first time you saw it?

A Approximately—what I can remember—around, about August 25th, approximately.

Q August twenty-fifth?

A Approximately.

Q Of 1995.

MS. PAOLUCCI [Plaintiff's Counsel]: I would like to note for the record that my client is trying to come up with a date.

Q I don't want any assumptions. I want your recollection?

A I can't give you a definitive.

MS. PAOLUCCI: To clarify your answer, is it whenever you received it in the mail?

MR. DOUGHERTY: I don't want any clarifications. This is a critical point.

Q Did you receive a copy of this letter through the mail, at your home at 151 Woodbury Road, Hauppauge?

A I believe I did.

Q Approximately when did you receive this letter?

MS. PAOLUCCI: Objection. Asked and answered.

Q Is your answer, approximately August 25, 1995?

A I don't know.

MS. KRAVETZ [Plaintiff's Counsel]: Objection. Leading the witness. He's already stated that he does not know.

Q What, if anything, did you do upon receipt of this August 14, 1995 letter from CCI addressed to you?

A I believe I read it.

* * *

Q Is it fair to say that in your prior testimony that you believe that you received an August 14, 1995 letter from CCI addressed to you?

A Yes, I believe, yes.

* * *

Q Any statement that you did not receive the August 14, 1995 letter from CCI would be false according to your recollection, your best recollection?

A Yes.

Deposition of Frank Savino, Feb. 20, 1997, Dougherty Aff. Exh E ("Savino Dep.") at 10–12, 30–31.

The following day, the plaintiff moved for leave to file a second amended complaint deleting the initial denial that he never received the August 14, 1995 letter, and alleged, instead, that he "received a letter from the Defendant dated August 14, 1995 for the purpose of collecting an alleged debt of $153.00 incurred by Savino with North Shore Hospital. This was the *first* letter Plaintiff Savino received from the Defendant with respect to the alleged debt." Sec. Am. Compl. ¶ 7 (emphasis in original). The second amended complaint does not refer to the August 28, 1995 letter, instead alleging that the August 14, 1995 letter violated his rights pursuant to the FDCPA.

By order dated February 21, 1997, Judge Lindsay granted the plaintiff leave to file a second amended complaint, in which, contrary to the prior pleadings, the plaintiff alleges:

7. Plaintiff Savino received a letter from the Defendant dated August 14, 1995 for the purpose of collecting an alleged debt of $153.00 incurred by Savino with North Shore Hospital. This was the *first* letter Plaintiff Savino received from the Defendant with respect to the alleged debt. . . .

8. While Savino, initially, did not recall receiving the letter, he has accepted CCI's repeated representations that such a letter was, in fact, sent, and, as well, admits that he is presumed to have received the letter as a matter of law.

Sec. Am. Compl. ¶¶ 7–8 (emphasis in original).

## B. The Summary Judgment Motions and the Defendant's Application for Rule 11 Sanctions

In the Memorandum of Decision and Order dated April 11, 1997, affirming Judge Lindsay's order granting the plaintiff's motion to file a second amended complaint, this Court also denied the defendant's motion for summary judgment and granted the plaintiff's motion for partial summary judgment as to liability. *Savino v. Computer Credit, Inc.,* 960 F.Supp. 599 (E.D.N.Y.1997). In reaching this conclusion, the Court deter-

mined that the August 14, 1995 letter sent to the plaintiff "insist[ing] on immediate payment" "overshadowed or contradicted" the mandatory 30 day debt validation notice which requires that consumers be advised that they have 30 days within which to contest the alleged obligation in violation of the FDCPA as a matter of law. *Id.* at 604 (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir.1996). In the same decision, the Court denied CCI's application for sanctions, pursuant to Fed.R.Civ.P. 11, in its reply papers, in addition to the costs and attorney's fees sought in its notice of motion. *Id.* at 606. This Court rejected the request, in part, because CCI did not follow the provisions of Rule 11 by filing this motion as part of its summary judgment motion. Nevertheless, "the Court [stated its] concern [with] this situation in which a party makes specific allegations in a pleading and then reverses his position without explanation. Accordingly, CCI's motion for sanctions is denied without prejudice and with leave to refile in compliance with the requirements of Rule 11." *Id.*

### C. The Plaintiff's Rule 23 Motion for Class Certification

In a subsequent Memorandum of Decision and Order dated June 9, 1997, this Court, in the exercise of its discretion, denied the plaintiff's motion to certify the class action, determining that neither Savino nor his attorney met the requirements of Rule 23(a)(4) "to fairly and adequately protect the interests of the class." *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 353–57 (E.D.N.Y. 1997). In reaching this conclusion, this Court emphasized its "concern[] about this flip-flopping in the plaintiff's sworn testimony with regard to the crucial material facts in this case." *Id.* at 356.

### II. THE DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

The defendant moves for an order pursuant to Fed.R.Civ.P. 11(c) imposing sanctions and attorney's fees against Savino and/or his attorney on the ground that the plaintiff made "deliberate misrepresentations" regarding whether he had received and read the August 14, 1995 letter, and that counsel failed to conduct a reasonably adequate inquiry into the facts surrounding the letter. As a result of the plaintiff's "misconduct" and frequently-changing position, the defendant claims it incurred $9,362.50 in attorney's fees for work "that was completely unnecessary." (Defendant's Memorandum of Law, at 17).

Rule 11, which provides for the award of sanctions, was amended in 1993. Under the amended Rule 11, sanctions may be awarded for violations of subsection (b), which provides in relevant part,

> **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted under existing law or by nonfrivolous argument for the extension modification or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

\* \* \*

Fed.R.Civ.P. 11(b). Motions for sanctions under Rule 11 must "be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection (b)." Fed.R.Civ.P. 11(c)(1)(A); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir.1995). A request for Rule 11 sanctions should not be included merely as an additional claim for relief, Fed.R.Civ.P. 11 (Advisory Committee Notes), and an award of sanctions is discretionary and

should be imposed with caution. *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.,* 73 F.3d 1253, 1258–59 (2d Cir.1996); *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994). The standard for sanctioning factual contentions under the current rule is whether there is, or will likely be, "evidentiary support" for the allegations. *Hadges,* 48 F.3d at 1328 (citing Advisory Committee note).

■ The central goal of Rule 11 sanctions is the deterrence of baseless filings and the curbing of abuses. *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Caisse Nationale de Credit Agricole–CNCA v. Valcorp,* 28 F.3d 259 (2d Cir.1994); *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 21 (2d Cir.1990) (Rule 11 was enacted to "discourag[e] dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process.").

■ A district court, however, should not impose sanctions so as to chill creativity or stifle enthusiasm or advocacy. *See Securities Indus. Ass'n v. Clarke,* 898 F.2d 318, 322 (2d Cir.1990). Rather, as Rule 11(c)(2) provides, the primary principle in imposing sanctions is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons. *See* Note on Advisory Committee to Rule 11, 1993 Amendments; *accord International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 392 (2d Cir.) (Rule 11 empowers a court with broad discretion to award that portion of an attorney's fee thought reasonable to serve the sanctioning purpose of the Rule), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989).

■ In the final analysis, the imposition of sanctions by the Court and the determination of the amount of the sanction is left to the court's ample discretion. *Caisse Nationale,* 28 F.3d at 264: *Eastway Constr. Corp. v. City of New York,* 821 F.2d 121, 123 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

■ Applying the foregoing standards to the instant matter, the Court, in its exercise of discretion, declines to impose sanctions, although it believes that the question is a close one and the Court is troubled by the plaintiff's contradictory assertions in regard to the receipt and reading of the August 14, 1995 letter. However, bearing in mind that the primary goal of Rule 11 sanctions is the "deterrence of baseless filings and the curbing of abuses," and that sanctions should be imposed with caution, the Court believes that sanctions are unwarranted, especially since the plaintiff ultimately prevailed on the merits of his claim. Accordingly, the defendant's motion for sanctions and attorney's fees pursuant to Rule 11 is denied.

## III. THE PLAINTIFF'S MOTION FOR STATUTORY DAMAGES, ATTORNEY'S FEES AND RELATED COSTS.

Having been granted partial summary judgment, the plaintiff now moves, pursuant to 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(3), for the award of: (1) statutory damages "in the Court's discretion, up to a maximum amount of $1,000.00"; (2) attorney's fees in the amount of $38,948.75; and (3) related costs in the amount of $316.74.

### A. Damages

The FDCPA provides that a debt collector who fails to comply with any provision of the statute is liable to such person. 15 U.S.C. § 1692k. The statute further states that upon a finding of liability, a Court may award an individual plaintiff certain damages, as follows:

§ 1692k. Civil liability

Amount of damages

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

. . . .

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

Factors considered by court

(b) In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such non-compliance, and the extent to which such non-compliance was intentional; . . .

The plaintiff does not seek any actual damages. Accordingly, the sole issue for resolution in this regard is the determination of "additional," or statutory damages.

■ The decision as to whether to award statutory damages, and the size of such an award, is committed to the sound discretion of the district court. *Teng v. Metropolitan Retail Recovery Inc.*, 851 F.Supp. 61 (E.D.N.Y.1994)(Spatt, J.)(citing *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir.1993); *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 27 (2d Cir.1989); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir.1989).

■ As set forth in the statute, statutory damages shall not exceed $1,000. In determining whether to award such "additional damages," the district court must consider "the frequency and persistency of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any 'additional damages' awarded." *Clomon*, 988 F.2d at 1322; 15 U.S.C. § 1692k(b).

■ With regard to additional statutory damages, the Court finds that the letter sent to the plaintiff's home, in violation of the clear provisions of FDCPA, warrants the im-position of $ 500.00 as "additional damages." In view of the relevant factors, an award representing half the maximum statutory amount of $1,000.00 is justified. Specifically, the violation concerned a single letter, which the plaintiff may not have read. In addition, while the letter failed to conform with the provisions of FDCPA, in that its insistence on immediate payment "overshadowed or contradicted" the mandatory 30 day debt validation notice, the letter is not threatening or abusive in tone. There also is no evidence that the defendant's non-compliance was intentional. Accordingly, judgment is awarded in favor of the plaintiff against the defendant for additional damages in the sum of $ 500.00.

**B. Attorney's Fees**

In addition to damages, Section 1692k(a)(3) provides that a prevailing plaintiff is entitled to recover "the costs of the action; together with a reasonable attorney's fee as determined by the Court." Plaintiff requests attorney's fees in the amount of $38,948.75, for approximately 187.133 attorney-hours calculated at varying hourly rates for attorney Scott N. Gelfand and his associate, Rhonda J. Kravetz. The application excludes time devoted to the plaintiff's unsuccessful motion for class certification.

In *Teng v. Metropolitan Retail Recovery Inc.*, 851 F.Supp. 61, 70–71 (E.D.N.Y.1994), this Court, citing *Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991), noted:

Section 1692k(a) sets forth the three standard components of liability for violations of the Act: it states that a debt collector who violates the act 'is liable' for actual damages, statutory damages as determined by the court, and a reasonable attorney's fee. Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.

*See also de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir.1990).

Indeed, several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted. *See Pipiles v. Credit Bureau of Lockport,* 886 F.2d at 28; *Emanuel v. American Credit Exchange,* 870 F.2d at 809; *cf. de Jesus,* 918 F.2d at 233–34 (construing the parallel provision of the Truth in Lending Act to mandate a fee award to a prevailing plaintiff).

The view that an award of attorney's fees is mandated is supported by the language of section 1692k(b). That section specifies that, in determining the amount of statutory damages to be awarded, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." Cases interpreting this section have made clear that in the instance of a single, trivial, and unintentional violation of the Act, it is within the court's discretion to decline to award statutory damages at all. *See, e.g., Pipiles,* 886 F.2d at 28; *Emanuel,* 870 F.2d at 809. However, section 1692k contains no parallel language directing the court to consider particular factors in determining a reasonable attorney's fee.

■ Thus, the Court adheres to its decision in *Teng* that, in a typical case under the Act, the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees. *See Texas State Teachers Assoc. v. Garland Indep. School Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989); *Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983).

■ The most useful starting point for determining the amount of an award of attorney's fees in a civil case is the "lodestar" method. *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1159 (2d Cir.1994). That method initially estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). A reasonable attorneys fee is:

One calculated on the basis of rates and practices prevailing in the market, *i.e.,* "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," and one that grants the successful civil rights plaintiff a "fully compensatory fee," comparable to what "is traditional with attorneys compensated by a fee-paying client."

*Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (citation omitted). *See also Blum v. Stenson,* 465 U.S. 886, 895–96, n. 11, 104 S.Ct. 1541, 1547, n. 11, 79 L.Ed.2d 891 (1984).

■ The product of reasonable hours times a reasonable rate does not end the inquiry. "There remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. In considering an adjustment to the lodestar calculation in order to arrive at a "reasonable" amount of an award of attorney's fees, the district court may consider the twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974). *See United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir.1989)(citing *Johnson v. Georgia Highway Express* factors with approval), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional

relationship with the client; and (12) awards in similar cases.

However, many of these factors are subsumed within the initial lodestar calculation. Thus, in *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–50, the Supreme Court held that the novelty and complexity of the issues, the quality of representation, the special skill and experience of counsel, and the results obtained are factors fully reflected in the lodestar calculation and cannot serve as independent bases for adjusting the basic fee award. *See also, Delaware Valley Citizens' Council*, 478 U.S. at 564–65, 106 S.Ct. at 3097–98; *United States Football League v. National Football League*, 887 F.2d at 415.

■■■ Furthermore, central to an application for attorney's fees is the submission of time records reflecting the hours expended by counsel in pursuing the successful claims of their client. In order for a party to recover attorney's fees, such time records must be made contemporaneously with the associated work. *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986). It is not necessary for the applicant to submit the actual diary entries made by the attorneys at the time they perform the work. Rather, reconstruction of such contemporaneous records on a computer and billing based on these records is adequate. *Cruz*, 34 F.3d at 1160. What is important is that "[t]hese records should specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). "The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987) (applying New York State law and noting that the Second Circuit rule is similar to that of New York); *see also Soler v. G & U, Inc.*, 801 F.Supp. 1056 (S.D.N.Y. 1992).

■■■ In determining the specific amount of an attorney's fee, the prevailing parties are entitled to reasonable hourly rates which fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Cruz*, 34 F.3d at 1159; *New York State Nat'l Org. for Women v. Terry*, 737 F.Supp. 1350, 1361 (S.D.N.Y.1990) (citation omitted), *aff'd in part, rev'd in part on other grounds*, 961 F.2d 390 (2d Cir.1992). The "prevailing community" the district court should look to consider the lodestar figure is the district in which the court sits. *Cruz*, 34 F.3d at 1159.

Counsel for the plaintiff requests attorney's fees in the amount of $38,948.75, for approximately 187.133 attorney-hours calculated at varying hourly rates for himself and one associate. The application does not include hours spent on the plaintiff's unsuccessful motion for class certification.

Plaintiff's attorney's fees application is broken down according to the following hours and rates:

| Attorney | Original Hours Requested by the Plaintiff | Requested Rate | Requested Total |
| --- | --- | --- | --- |
| Gelfand | 145.05 | $225.00/hour | $32,636.25 |
| Kravetz | 42.083 | $150.00/hour | $ 6,312.50 |

■■■ Counsel for the defendant opposes the fee application on the ground that since there are no actual damages in this case, and only the nominal, statutory damages are being awarded, attorney's fees are altogether inappropriate. In support of its position, the

defendant cites the Supreme Court's decision in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), which held that courts should consider the extent of the plaintiff's recovery in fixing a reasonable attorney fee award, and that a civil rights plaintiff who recovered nominal damages of only $1 on a claim for $17 million dollars in compensatory damages was not entitled to an attorney fee award under the civil rights statute. Counsel also relies on the Fourth Circuit's decision in *Carroll v. Wolpoff & Abramson,* 53 F.3d 626 (4th Cir.1995), an FDCPA case where the Court of Appeals held that a $500 attorney fee award was not an abuse of discretion, and the Fifth Circuit's decision in *Johnson v.. Eaton,* 80 F.3d 148 (5th Cir.1996), where the Circuit Court found that the defendant's "mere technical violation" of the FDCPA, which was not found sufficient to support the award of statutory damages, would not support an award of prevailing party attorney's fees. The Court is not dissuaded from awarding attorney's fees on the basis of the cases cited. As noted above, this Court has previously held that attorney's fees must be awarded in FDCPA cases. In addition, the Court finds that *Johnson v. Eaton,* 80 F.3d 148 is inapposite, since there, no statutory damages were awarded, while here, this Court has awarded "additional damages" in the amount of $ 500.00. Moreover, *Carroll v. Wolpoff & Abramson,* 53 F.3d 626 upholds the district court's discretionary powers in determining fees.

Accordingly, the Court has reviewed the applicable law in this and other Circuits and determines that, based upon the type of work performed and the experience of the attorneys, the following maximum rates are fair and reasonable: for Scott N. Gelfand, $200 per hour; for Associate Rhonda J. Kravetz, $135 per hour. *See, e.g., Walz, et al. v. Town of Smithtown,* 46 F.3d 162 (2d Cir.)(upholding this Court's determination of attorney's fees), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995). These rates are in line with the rates that have been recently awarded in the Eastern District of New York. *See, e.g. Bourgal v. Atlas Transit Mix Corp.,* No. CV–93–0569, 1996 WL 75290, at *6 (E.D.N.Y.1996); *Cruz v. Local Union No. 3,* 150 F.R.D. 29, 34–35 (E.D.N.Y.1993), *aff'd in part, rev'd in part on other grounds,* 34 F.3d 1148 (2d Cir.1994). Therefore, the hours submitted by the attorneys at the lodestar rate are redetermined by the Court as follows:

| Attorney | Original Hours Requested by the Plaintiff | Adjusted Rate | Adjusted Requested Total |
|---|---|---|---|
| Gelfand | 145.05 | $200.00/hour | $29,010.00 |
| Kravetz | 42.083 | $135.00/hour | $ 5,681.20 |
| NEW TOTAL: | $34,691.20 | | |

Next, the Court finds that the number of hours for which plaintiff's counsel seek compensation, specifically, 187.133 hours spent by the two attorneys on this case, is totally unreasonable and should be substantially reduced. Giving plaintiff's counsel every benefit, the Court cannot view the expenditure of in excess of 187 attorney-hours in this relatively simple case as necessary or reasonable. *See Luciano v. The Olsten Corp.,* 109 F.3d 111, 117 (2d Cir.1997)(upholding district court's decision to reduce the number of compensable hours for "contentious" behavior and for unnecessary second-seated counsel at jury selection and trial); *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 898 F.Supp. 116, 127 (E.D.N.Y.1995), *aff'd,* 96 F.3d 1409 (Fed.Cir.1996); *Mendoza v. City of Rome,* 162 F.R.D. 260, 264 (N.D.N.Y.1995)(adjusting hours expended on the action because it was unnecessary for two

attorneys to attend examinations before trial and the trial).

In reviewing the case file, the Court notes that the complaint is just over four pages in length. It consists of a single, straightforward claim of an action brought under the FDCPA, involving the mailing of a single offending letter. The First and Second Amended Complaints are of similar length, and contain only *de minimus* changes relating to the plaintiff's reading and receipt of the August 14, 1995 letter. The Answer is a mere six pages long. It appears that the parties participated in only four status conferences before this Court and the Magistrate Judge, and counsel were permitted to appear at two of those conferences by telephone. The bulk of the work done in this case related to the filing and argument of the motions for summary judgment, the plaintiff's unsuccessful motion for class certification (the fees relating to which are not at issue), and the plaintiff's motion for leave to file the amended complaint. No trial work was involved. The discovery was appropriately limited to the very narrow, unremarkable issue set forth in the complaint. Under these circumstances, the Court finds that the $34,691.20 fee is grossly excessive.

The Court also views the requested amount as unreasonable, in view of the fact that much of the effort expended by counsel in the plaintiff's behalf results from the plaintiff's constantly-shifting memory regarding the August 14, 1995 letter. As noted above in greater detail, the initial and the first amended complaints, as well as other correspondence, which were drafted by counsel, allege that the plaintiff never received the August 14, 1995 letter. The second amended complaint, which was filed on February 27, 1997, states that Savino did receive the August 14, 1995 letter. This modification occurred only after the plaintiff made the admissions noted at his deposition. Then, in his reply papers in support of his motion for class certification, Savino apparently changes his version once again, reverting to his original position that he never received the August 14, 1995 letter. The only explanation the plaintiff offers for these changes of position is that he was "confused" by his attor-

ney's explanation with regard to the legal presumption as to the mailing of the August 14, 1995 letter. While the Court, in its discretion, has opted not to sanction plaintiff or counsel for this "flip-flopping," by the same token, they should not be awarded attorney's fees which include, in large measure, hours devoted to the plaintiff's inconsistencies. To do otherwise would provide the plaintiff with an undeserved windfall.

In view of the foregoing, the Court reduces the lodestar amount to $ 3,675.00. This figure represents: 15 hours, at the rate of $ 200/hour, for the efforts of Gelfand; and 5 hours, at the rate of $ 135.00/hour, for his associate, Kravetz. The Court has reviewed the remaining objections of the defendant and finds them to be without merit.

Finally, with regard to the plaintiff's application for costs and disbursements, a court generally will award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir.1987). However, "[a] prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead." *New York State Nat'l Org. for Women v. Terry*, 737 F.Supp. at 1363.

The Court has reviewed the affidavit of counsel listing costs and disbursements in the amount of $316.74. No actual bills or records have been included. The Court declines to award costs for "Travel Expenses," "Federal Express," "Photocopying Expenses," or "Telephone Conference Call." Counsel's request for costs in the amount of $120.00 for the filing fee is granted.

## IV. CONCLUSION

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the plaintiff's motion for statutory damages in the amount of $500.00 is granted; and it is further

ORDERED, that the plaintiff's motion for attorney's fees and costs is granted, to the extent that plaintiff's counsel is hereby

awarded $3,675.00 in attorney's fees, plus $120.00 in disbursements; and it is further

ORDERED, that the defendant's motion for sanctions pursuant to Rule 11 is denied; and it is further

ORDERED, that the Clerk of the Court is directed to enter judgment in favor of the plaintiff Savino against the defendant Computer Credit, Inc. in the sums set forth above, and close this case.

**SO ORDERED.**