Frank SAVINO, Plaintiff,

v.

**COMPUTER CREDIT,
INC., Defendant.**

**No. 95–CV–4446 (ADS).**

United States District Court,
E.D. New York.

Nov. 20, 1999.

Mesiter, Seelig & Fein, LLP, New York City, By Scott N. Gelfand, Brent A. Burns, of counsel, for Plaintiff Frank Savino.

Robert L. Dougherty, Garden City, NY, for Defendant Computer Credit, Inc.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In prior proceedings in this case, this Court found that the Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(g), in a single letter mailed to the debtor Plaintiff. *Savino v. Computer Credit Inc.*, 960 F.Supp. 599 (E.D.N.Y. 1997) (*"Savino I"*). Presently before the Court is the Plaintiff's second application for attorney's fees, following remand from the Second Circuit.

### BACKGROUND

The factual circumstances of the underlying case, set forth fully in *Savino I*, are incorporated by reference here. In short the Defendant sent a series of letters to the Plaintiff demanding payment of an outstanding debt. The Court granted summary judgment to the Plaintiff, finding that one of these letters, dated August 14, 1995, which demanded immediate payment of the debt, violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which entitles a debtor to request confirmation of the amount owed within 30 days of being notified of the debt. *Savino I*, 960 F.Supp. at 604–05.

Thereafter, the Plaintiff moved for an award of statutory damages and attorney's fees, and the Defendant moved for sanctions under Rule 11, on the ground that the Plaintiff repeatedly and frivolously changed his position on whether or not he ever received the August 14, 1995 letter. Although finding it "a close call," this Court denied the request for sanctions, and awarded the Plaintiff statutory damages in the amount of $500. In addition, finding that the Plaintiff's request for more than $34,000 in fees was "grossly excessive," the Court awarded the Plaintiff the sum of $3,675 in attorney's fees. *Savino v. Computer Credit, Inc.*, 990 F.Supp. 159 (E.D.N.Y.1998) (*"Savino II"*).

The Plaintiff appealed the Court's decision to the Second Circuit, challenging the Court's refusal to certify a class of affected persons with Plaintiff as representative and the Court's reduction of both the hourly rate and the reasonable number of hours requested by the Plaintiff. The Defendant cross-appealed, challenging the findings that it had violated the FDCPA, that an award of statutory damages was appropriate, and that Rule 11 sanctions should not be imposed against the Plaintiff. The Second Circuit affirmed all of this Court's rulings with one exception; it found that this Court's "failure to explain its specific methodology and rationale supporting the substantial reduction in the number of compensable hours was error." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87–88 (2d Cir.1998) (*"Savino III"*). The Second Circuit thus remanded the matter to this Court, with instructions "to provide specific reasons for its calculation of attorney's fees, particularly for any decision to set the number of compensable hours at a figure lower than that sought by Savino." *Id.*

Plaintiff is now before the Court on the remanded issue of attorney's fees, arguing that (i) this Court improperly applied the "lodestar" method of calculating a fee award, (ii) that the Second Circuit's decision affirming the denial of sanctions vindicated the Plaintiff's early changes of his theory of the case, and (iii) that such a small fee award would have a chilling effect on the willingness of attorneys to bring FDCPA cases. The Plaintiff is also seeking an award of its attorney's fees for pressing its case before the Second Circuit.

## DISCUSSION

It is well established that the proper method for determining the amount of a prevailing party's attorney's fee award is the "lodestar" method, in which an initial estimate of fees is obtained by multiplying the number of hours reasonably expended by counsel on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999) *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763–64 (2d Cir.1998); *Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir.1997). However, the court "should exclude from this initial fee calculation hours that were not 'reasonably expended' due to reasons such as overstaffing, unnecessarily contentious conduct, and unsuccessful claims." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *Luciano*, 109 F.3d at 116; *Quaratino, supra.* Rather than weighing the reasonableness of each individual time entry, the court may exclude excessive and unreasonable hours from a fee request by making an across-the-board reduction in the amount of hours. *Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir.1998); *Luciano*, 109 F.3d at 117.

Here, the Plaintiff's attorney has submitted a request for fees indicating roughly 187 hours spent in pursuit of the initial litigation, with more than three-quarters of those hours billed by Scott Gelfand himself. As the Court has already indicated in *Savino II*, it considers that amount of time to be "totally unreasonable," 990 F.Supp. at 169, and "grossly excessive." 990 F.Supp. at 170. Having presided over this case from beginning to end, the Court is well aware that this was a fairly simple case, necessitating, in the Court's view, minimal factual development. The case involved a single, unremarkable legal issue—whether the August 14, 1995 letter, which demanded immediate payment, complied with the specific statutory requirements of the FDCPA. *Id.* In light of the simplicity of this case the Court

finds that the actual hours that Plaintiff's counsel allegedly spent on this case were excessive, and must be reduced before the lodestar figure can be properly calculated.

For example, the Court observes that Gelfand has significant expertise in representing FDCPA plaintiffs in both individual and class actions. As a result, the Court is baffled as to why an attorney with Gelfand's knowledge and experience needed more than 10 hours to conduct research "regarding FDCPA violations" before drafting the original complaint which raised no novel or unusual issues. Similarly, the Court observes that, despite Gelfand's extensive experience and prodigious pre-action research, two of the Plaintiff's attorneys spent almost 50 additional hours researching and drafting summary judgment papers, even though no complex factual or legal issues were raised. *See e.g.* 990 F.Supp. at 170 (when this Court characterized the issue raised by the Plaintiff as "unremarkable."). Given the simplicity and routine nature of the issues that were eventually presented to the Court, the Court finds that the vast bulk of these hours were excessive and should not be considered in the lodestar calculation.

Furthermore, the Court finds that another large percentage of the Plaintiff's attorney's hours resulted from the Plaintiff's successive efforts to amend the complaint to comport with inconsistent facts that turned up during discovery. As is set out more fully in *Savino II*, the Plaintiff's original complaint alleged that an August 28, 1995 letter, the only demand letter he claimed to receive, violated the FDCPA. 990 F.Supp. at 162. The Defendant immediately produced an earlier letter, dated August 14, 1995, that was sent to the Plaintiff, and he eventually amended his complaint to acknowledge the existence of the earlier letter but to deny receiving it. *Id.* at 163. Then, after testifying at his deposition that he did receive the August 14, 1995 letter, the Plaintiff amended his complaint a second time to admit receiving the earlier letter and change his legal the-

ory to allege that the earlier letter violated the FDCPA, while dropping all claims relating to the August 28, 1995 letter. *Id.*

■ From its ringside seat to the parties' quarrels over these letters and the ensuing amendments, the Court is of the opinion that, under the particular facts of this case, an award of attorney's fees for the Plaintiff's successive motions to amend would be unreasonable and improper. As the Second Circuit stated, the court should exclude from a fee calculation any hours spent on claims that are factually or legally unrelated to claims on which the plaintiff succeeds. *Kirsch,* 148 F.3d at 173; *LeBlanc–Sternberg,* 143 F.3d at 764. Here, the Plaintiff eventually abandoned his initial efforts to state a claim based on the August 28, 1995 letter, and thus, attorney's fees related to the initial efforts by Plaintiff to attack the August 28, 1995 letter would not be recoverable.

Moreover, based on its knowledge of the case, the Court finds that the approximately 25 hours of time subsequently spent by the Plaintiff's attorney on moving to amend the complaint to account for the existence of the August 14, 1995 letter were also unnecessary. Initially, the Court notes that the sheer amount of time spent by Plaintiff's counsel15 hours for "research" and preparation of a motion to amend and an additional 5 hours for preparation of reply papers was excessive, given that the standards for granting leave to amend and among the most well-known, settled, and lenient rules in the law. Furthermore, the Court notes that the Plaintiff was made aware of the existence of the August 14, 1995 letter almost immediately after the filing of the initial complaint in October 1995. A reasonable attorney would have simply amended his complaint as of right to acknowledge the letter's existence, thus avoiding later time-consuming motion practice. However, instead of amending immediately, the Plaintiff decided to deny the existence of the letter and sought to amend his complaint only after capitulating more than six months later.

The unnecessary wrangling over the existence and/or receipt of the August 14, 1995 letter is · particularly glaring, since the Plaintiff's eventual success in this case came from attacking that letter head-on. In the Court's view, the battle over amending the complaint was unnecessarily caused by the Plaintiff's refusal to revise his initial theory of the case promptly upon discovering evidence that contradicted it. While this Court found, and the Second Circuit agreed, that the Plaintiff's "contradictory assertions" about the facts of the case were not sufficiently egregious to warrant the imposition of Rule 11 sanctions, 164 F.3d at 81, this Court also finds that it would be unreasonable to force the Defendant, who promptly revealed the existence of the August 14, 1995 letter, to foot the bill for all this totally unnecessary legal work.

Thus, the Court finds that large portions of Plaintiff's counsel's actual hours were unnecessary or excessive, warranting a substantial reduction in calculating the lodestar figure. Faced with so many excludable hours, the Court finds that an item-by-item evaluation of the Plaintiff's attorney's time sheets is impractical, and instead concludes that an across-the-board reduction of hours is necessary to reflect a reasonable number of hours for pursuing this case. *Kirsch, supra.* In the Court's estimation, based on both its experience and review of similar cases in other jurisdictions, a reasonable attorney could have accomplished the same results as the Plaintiff's counsel by investing roughly 20 hours of work. Initial client intake, preliminary research, and the drafting of a simple FDCPA complaint should have taken no more than three hours. *See e.g. Shapiro v. Credit Protection Assoc.,* 53 F.Supp.2d 626, 628 (S.D.N.Y.1999) ("He opened a file, prepared a simple, four-page complaint, and attended a pretrial conference, tasks reasonably accomplished in three hours for an attorney with 'extensive experience in FDCPA litigation.' "). Since the sole issue to be tried was whether, as a

matter or law, the August 14, 1995 letter complied with the requirements of the FDCPA, discovery in this case merely involved production of the letter and interrogatories or a short deposition establishing when and if the Plaintiff received it. These tasks could easily have been completed by a reasonable attorney with another three hours of effort. Indeed, the time sheets submitted by the Plaintiff's attorneys suggest that, other than a three hour deposition of the Plaintiff, no other significant discovery was conducted.

Further, the single legal issue involved was not a complex one, and because the Plaintiff's counsel is highly experienced in FDCPA cases, the Court estimates that research and briefing of the summary judgment motion could have been completed in approximately ten hours. An additional four hours would be appropriate for miscellaneous correspondence, court conferences, and other tasks. All told, this Court estimates that a reasonable, experienced attorney in this field could have obtained the results achieved by the Plaintiff with 20 hours of work. *Compare Orchano v. Advanced Recovery Inc.*, 107 F.3d 94 (2d Cir.1997) (finding award of only 181 hours appropriate for FDCPA case where plaintiff was forced to brief and argue three motions to dismiss, select a jury, and conduct two-day jury trial) *and Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir.1986) (affirming a district court's finding that the FDCPA claim that was "vigorously" litigated and culminated in a short trial could have been accomplished in 50 hours of attorney time).

Based on this estimate, the Court finds that the lodestar calculation should reflect an across-the-board reduction of the reasonable hours expended on this case to a total of 20 hours. The Second Circuit in *Savino III* has affirmed this Court's finding that a reasonable rate is $200 an hour for Gelfand, and $135 an hour for Rhonda Kravetz. 164 F.3d at 87. The Court sees no reason why the division of effort between Gelfand and Kravetz reflected in their time sheets should be disturbed, and the Court apportions three-fourths of the 20 hours to Gelfand and the remaining fourth to Kravetz. Thus, the lodestar calculation is (15 hours × $200) + (5 hours × $135) for the total sum of $3,675. The Court has further considered whether numerous other factors, articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), warrant an upward or downward adjustment to the lodestar figure, *see Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. 1933, and concludes that no further adjustment is necessary.

Therefore, the Court awards the Plaintiff attorney's fees in the amount of $3,675 for the litigation of the case in chief. The Court is not persuaded by Plaintiff's argument that this reduced award will operate as a disincentive to attorneys to bring FDCPA cases. As the Court has indicated, a reasonable attorney could have achieved the same results for the Plaintiff by expending only 20 hours, and would have received full compensation for each hour spent. Any disincentive from this Court's decision, then, operates only with regard to attorneys who expend needless and unnecessary time in pursuing relatively routine FDCPA cases. As the Sixth Circuit has recently observed, "[t]he Congress that passed the Fair Debt Collection Practices Act of 1977 could hardly have wished to reward lawyers for doing nonproductive work and wasting their adversaries' time and the time of the courts as well." *Lee v. Thomas and Thomas*, 109 F.3d 302, 306 (6th Cir.1997).

The Plaintiff further requests an award of attorney's fees expended on the appeal to the Second Circuit in the sum of approximately $16,400, as well as the fees incurred in making the present fee request in the sum of approximately $5,265. If a prevailing party is entitled to attorney's fees in the underlying action, that party is also entitled to a reasonable attorney's fee for costs incurred in obtaining a successful ruling on appeal. *See Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 113 F.3d 357 (2d. Cir.

1997); *Orchano,* 107 F.3d at 101, *citing Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 506 (2d Cir. 1980).

Here, the Plaintiff filed an appeal of this Court's denial of class certification and both the reasonable fee and reasonable hours components of the attorney's fee award. Defendant then cross-appealed this Court's decision finding an FDCPA violation, the award of statutory damages, and the refusal to grant Rule 11 sanctions against the Plaintiff. The Plaintiff successfully defended all of this Court's rulings in his favor, but was unsuccessful on each of his own appeals. This Court does not consider the Second Circuit's remand for clarification of the Court's calculation of the appropriate hours spent by Plaintiff's attorney to be the equivalent of a reversal. *C.f. Orchano,* 107 F.3d at 99–101 (fees on appeal awarded after appeals court vacated district court's award of attorney's fees). Consequently, this Court finds that Plaintiff was only substantially, certainly not completely, successful on appeal.

The time sheets submitted by Plaintiff set forth a total of approximately 97 hours for the appeals. Almost all of the legal work on the appeal was done by Gelfand and his associate, David Seaman. Again, the Court finds that a number of hours spent in the appeal process were excessive or unnecessary. For example, the Court observes that almost 28 hours were spent by Seaman in preparing the joint appendix. Preparation of the appendix, which is merely a reproduction of the relevant filings in the case, Fed. R.App. P. 30(a)(1), is largely a clerical matter requiring little oversight by an attorney. Moreover, as there was not an unusually large number of pleadings and rulings relevant to the issues on appeal, the Court finds that the number of hours billed by Seaman for preparation of the joint appendix is grossly excessive. Since Seaman's involvement with preparation of the joint appendix merely required identification of the appropriate entries, preparation of a simple index, delegation of the copying and collat-

ing task to a clerical employee or photocopy shop, and review of the finished product, the Court finds that all but 4 of the hours claimed by Seaman for preparation of the appendix should be excluded as unnecessary.

Removing 24 hours from Seaman's claimed time leaves an initial calculation of 23 hours for Seaman, which including 1.41 hours attributable to fellow associate Kravetz, at $135 an hour, and 50 hours for Gelfand at $200 an hour, for an initial figure of $13,240 in fees on appeal. In light of the Plaintiff's partial lack of success on appeal, successfully defending the decisions in his favor but failing to reverse those rulings he challenged, the Court finds that a one-third reduction of the $13,240 figure is appropriate. Thus, the Court finds that an award of $8,827 in attorney's fees on appeal is more than appropriate.

Therefore, the Court awards Plaintiff the sum of $8,827 in attorney's fees on his appeal.

Finally, the Plaintiff asks for additional attorney's fees in the sum of approximiately $5,265 for the time incurred in making the instant request for fees. At this point, the Court is reminded of Justice Brennan's observation in *Hensley,* that repetitive post-decision litigation solely over the amount of attorney's fees awarded is "one of the least socially productive types of litigation imaginable." 461 U.S. at 442, 103 S.Ct. 1933 (concurring in part). Having reviewed the remaining time sheets for Plaintiff's post-appeal proceedings, this Court has determined that a minimal amount of time was necessary for making a second fee request. Because the Second Circuit's remand merely requested clarification from this Court as to its justification and methodology, extended briefing and a third reiteration of the Plaintiff's position on the proper award of fees was totoally unnecessary.

Moreover, the Court finds that the request for an astonishing *40* additional hours of attorney's fees solely for making the instant motion borders on the absurd. All of the alleged working hours on the

most recent fee request were by Brent Burns, the fourth attorney to be involved with this case. The Court does not consider time spent by Burns "coming up to speed" on the case, both legally and factually, to be "necessary" to the instant motion, given the clear explanation of the relevant facts and law in the three written decisions that the courts have issued on this case. To make the current fee request, the Plaintiff merely needed to collect the relevant time sheets, draft a short affidavit and memorandum of law, and appear for argument. The Court finds that five hours would be more than sufficient time to complete these tasks.

Consequently, the Court, in its discretion, concludes that the Plaintiff is entitled to an award of $ 675 in attorney's fees for preparing the instant motion.

Based on the foregoing, the Court finds that Plaintiff is entitled to a judgment of $3,675 in attorney's fees on his main case, an additional $8,827 for fees incurred defending against Defendant's appeal, and $ 675 for making the instant motion. No further fees are warranted.

**SO ORDERED**