Dennis H. FINK, Plaintiff,

v.

CITY OF NEW YORK, and New York
City Fire Department Defendant.

No. Civ.A. 97CV6314DGT.

United States District Court,
E.D. New York.

May 23, 2001.

Margaret H. Mayo, Gaffin & Mayo, P.C., New York, NY, for plaintiff.

William S.J. Fraenkel, New York, NY, for defendant.

### MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiff Dennis H. Fink, a retired fire marshal with the New York City Fire Department sued the City and the Fire Department under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, et. seq., and the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12101, claiming discrimination and retaliation on the basis of his military service and his perceived disability, a hearing loss. A trial was held, and Fink prevailed on all his claims. After the conclusion of the trial, defendants moved for judgment a matter of law overturning the jury's verdict, or, in the alternative, for a new trial, noting numerous dispositive issues on which, they claimed, no reasonable jury could have found for Fink. By a March 1, 2001 opinion, this court denied the defendants' motion for a judgment as a matter of law but granted the motion for a new trial on the issue of emotional damages unless Fink was willing to accept a $175,000 remittitur. He accepted that re-

mittitur on March 14, 2001. No further appeal was made from this court's ruling. Fink now moves for attorneys' fees pursuant to the provisions of USERRA, 38 U.S.C. § 4323(h)(2) and the ADA, 42 U.S.C. § 12117(a).

## Background

Fink has made the following fee request based upon the work of two partners, Dudley Gaffin and Margaret H. Mayo, a senior associate, Christopher Morik, and a junior associate, Mary Bruderlein:

| Attorney | Hours | Rate | Amount |
|----------|-------|------|--------|
| Dudley Gaffin | 54.4 | $350.00 | $ 19,040.00 |
| Margaret H. Mayo | 373.2 [1] | $350.00 | $130,620.00 |
| Christopher Morik | 33.8 | $250.00 | $ 8,450.00 |
| Mary Bruderlein | 149.6 | $200.00 | $ 29,920.00 |
| TOTAL LODESTAR | | | $188,030.00 |

See Pl.'s Not. Mot. for Attorneys Fees and Expenses [hereinafter "Pl.'s Not."] at 24. Fink further requests a 75% multiplier to bring the fee up to a total of $311,596.00. See id. at 25. Finally, Fink requests $3,615.50 in miscellaneous expenses. Defendants raise various objections to each of these requests.

## Discussion

### (1)

Section 4323(h)(2) of USERRA provides that "in any action or proceeding to enforce a provision of this chapter by a person ... who obtained private counsel for such action or proceeding, the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses." 38 U.S.C. § 4323(h)(2) (1998). Section 12117(a) of the ADA refers the claimant to 42 U.S.C. § 2000e–5(k), which provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. § 2000e–5(k) (1964).

The Supreme Court has said that to be eligible for a fee award, a plaintiff must prevail on "any significant claim affording some of the relief sought." Texas Ass'n v. Garland, 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). Fink prevailed on all of his claims, and thus, there is no question that and no dispute about the fact that he is a prevailing party for the purposes of these statutes. He is consequently eligible to receive attorneys' fees.

■■■ To calculate attorneys' fees, one must begin by calculating the "lodestar," which is the number of hours reasonably expended multiplied by the applicable hourly market rate for legal services. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). To determine what constitutes a reasonable rate, the proper starting point is the attorney's customary rate. See Meriwether v. Coughlin, 727 F.Supp. 823, 831 (S.D.N.Y.1989); Reid v. New York, 584 F.Supp. 461 (S.D.N.Y.1984); Andrews v. Koch, 554 F.Supp. 1099, 1100–1101 (E.D.N.Y.1983); see also Islamic Ctr. of Miss. v. Starkville, Miss., 876 F.2d 465, 469 (5th Cir.1989); Kelley v. Metropolitan Cty. Bd. of Educ., 773 F.2d 677, 683 (6th Cir.1985) (en banc); Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3rd Cir.1985), vac'd on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986).

Fink proposes to be reimbursed at a rate of $350.00 per hour for partners, $250.00 per hour for senior associates and $200.00 per hour for junior associates. See

---

1. This number takes into account the additional hours logged by Ms. Mayo after the initial lodestar calculation. See Pl.'s Repl. Aff. of Servs. at 2.

Pl.'s Mem. Law Supp. Mot. for Award of Atts.' Fees and Expenses [hereinafter "Pl.'s Mem."] at 4. This is the rate that Fink's counsel, Gaffin & Mayo, P.C., normally charges clients. However, in this case, the retainer agreement specified a rate of $150.00 per hour: "In view of your staitened [sic] financial circumstances, for our services you agree to pay us at the reduced rate of $150.00 per hour." Reply Aff. of Servs., Ex. 3. [hereinafter "Pl.'s Ex. 3"]. The retainer agreement also included the following language:

> We shall make an application to the court for attorneys fees at our normal billing rates of $350.00 per hour for the services of Margaret H. Mayo and Dudley Gaffin and $200.00–$250.00 per hour for the services of the firm's associates, and disbursements. In the event the attorneys fees and disbursements awarded us equals or exceeds the amount that we requested, then you shall receive a refund of monies paid by you to us.

*Id.*

The defendants, citing the Second Circuit's decision in *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 146 (2d Cir.1993), argue that the best evidence of what a reasonable rate should be is the rate that the attorney actually bills his or her clients. *See* Defs.' Mem. Law Opp. Pl.'s Counsel's Mot. for Att.'s Fees and Expenses [hereinafter "Defs.' Mem."] at 9. "[S]ince plaintiff's counsel actually billed the client $150.00 per hour for all attorney services, that number is presumptively the rate that plaintiff's counsel themselves believe is reasonable compensation for their services in this matter." *Id.*

■ It is quite clear from the retainer agreement, however, that Fink's attorneys did not believe that the $150.00 that they were charging him was a reasonable rate; rather, they specifically referred to it as a reduced rate and took the case on what might be described as a partial contingency basis. If anything, it is their customary rate and not the reduced rate that they charged to Fink that could be considered the market rate that they charge to their clients. *See Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1524 (D.C.Cir. 1988) (finding that for-profit attorneys who charge lower rates to some clients in order to promote the public interest are nevertheless entitled to compensation at the market rate).

■ However, plaintiff's counsel's customary rate must also be measured against the prevalent market rate in the district in which the relevant trial court sits. *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987). Fee awards in other recent Eastern District of New York cases have ranged from $200 to $250 for partners and from $100 for junior associates to $200 for senior associates. *See Hiller v. County of Suffolk*, 199 F.R.D. 101, 109 (E.D.N.Y. 2001); *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C.*, No. Civ. 96–4489, 2000 WL 130637 at *2 (E.D.N.Y.2000); *Greenidge v. Mundo Shipping Corp.*, 60 F.Supp.2d 10, 12–13 (E.D.N.Y.1999); *Perdue v. City Univ. of New York*, 13 F.Supp.2d 326, 345–46 (E.D.N.Y.1998).

■ Fink's request for a fee of $350.00 for Ms. Mayo and her partner Mr. Gaffin, $250.00 per hour for Christopher Morik, the senior associate on the case and $200.00 per hour for Mary Bruderlein, the junior associate on the case, is clearly in excess of the prevailing rates. It is true, however, that the lodestar traditionally reflects such factors as time and labor required, novelty and difficulty of issues,

skill required, loss of other employment in taking the case, whether the fee is fixed or contingent, time limitations imposed by the client or circumstances, the amount involved and result obtained, counsel's experience, reputation and ability, the undesirability of the case and the nature and length of the relationship with the clients. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *Krieger v. Gold Bond Building Products,* 863 F.2d 1091, 1099 (2d Cir. 1988). In many of these respects, Fink's case was an exceptional one.

As Fink correctly points out, this case involved novel and difficult issues arising under USERRA, a new statute with a distinct dearth of caselaw to undergird its provisions. The fact pattern in this case, involving, among other issues, a failure by the Fire Department to administer a promotional make-up exam to Fink immediately upon his return from active duty in Panama and a subsequent promotional exam administered several years late and on outdated information without Fink's having the benefit of relevant study materials, was not one for which any on-point or even remotely analogous case under either USERRA or its predecessor statutes could be found in this or any other circuit. Having written at length on the issues in this case in reviewing defendants' request for a judgment as a matter of law,

see *Fink v. City of New York,* 129 F.Supp.2d 511 (E.D.N.Y.2001), I can personally attest to the fact that the discussion of the applicable standard pursuant to which defendants could be held liable under USERRA was both novel and far from straightforward.

In addition, the quasi-contingent nature of the representation, the riskiness of the case itself,[2] the experience of Fink's counsel,[3] and the fact that Fink prevailed on absolutely all his claims, resulting in a jury award of $800,000 in emotional damages alone that had to be reduced to $300,000 in accordance with the statutory cap and then to $125,000 to avoid shocking the judicial conscience all militate in favor of a generous fee award. Fink's principal lawyer, careful and conscientious throughout and effective in her presentation to the jury, was able to deploy diligently obtained documentary evidence against witnesses such as Chief Fire Marshall Michael Vecci and the Fire Department's Chief Medical Officer, Kerry Kelly, M.D. in order to show important inconsistencies in the Fire Department's policies with regard to the administration of veteran make-up examinations and the discriminatory conduct of hearing tests. *See* Pl.'s Not. at 6–7, 10. They were ultimately able to help Fink come across to the jury as an immensely sympathetic witness, and the jury's verdict reflected this assessment.

**2.** Because of the novelty of the issues, and the need to make new law in addressing the defendant's motion for judgment as a matter of law, there was inherently a much higher than normal chance that even a favorable jury verdict might have been overturned by the court, and the outcome was consequently quite unpredictable.

**3.** Margaret H. Mayo is an experienced litigator who has been practicing since 1977, and has tried cases, including civil rights cases, in state and federal court and before state and city administrative agencies. *See* Pl.'s Not. at

21. Dudley Gaffin is an experienced litigator who has been practicing since 1950 and has also handled civil rights cases and voting rights cases in both state and federal court and before state and city administrative agencies. *See id.* Christopher Morik is a senior associate at Gaffin & Mayo, P.C. who joined the firm in 1994 and has assisted in various civil rights and voting rights cases. *See id.* at 21–22. Mary Bruderlein is a junior associate at Gaffin & Mayo, P.C. who joined the firm in 1996 and has also handled a number of civil right claims in federal agencies. *See id.* at 22.

■ Thus, Fink is entitled to a fee award that is a bit higher than the hourly rate awarded for more conventional employment discrimination cases. *See, e.g., Hiller,* 199 F.R.D. 101; *Fernandez,* 2000 WL 130637. Accordingly, while the $350 per partner, $250 per senior associate and $200 per junior associate rate is too far outside the range of prevailing rates for the district, a rate of $275 per partner, $225 per senior associate and $150 per junior associate is acceptable and will be designated as the applicable rate for this case.[4]

### (2)

■ In addition to contesting plaintiff's counsel's hourly rates, defendants raise objections to some of the time billed. The Supreme Court has stated that district courts should "exclude from ... [the] fee calculation hours that were not 'reasonably expended,'" including "excessive, redundant, or otherwise unnecessary" work. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40; *see also Luciano v. The Olsten Corp.,* 109 F.3d 111, 117 (2d Cir.1997). Where an attorney has experience in the relevant field, he is reasonably expected to spend less time researching various routine matters with which a less experienced attorney might be unfamiliar, *see, e.g., Grey v. Chater,* 1997 WL 12806, *2, 1997 U.S. Dist. LEXIS 208, at *5 (S.D.N.Y. Jan. 13, 1997), and this makes perfect sense since, presumably, the experienced attorney is being compensated at a higher hourly rate due in part to his expertise in a given area, which allows him to spend less time on the same tasks that an inexperienced counterpart would take longer to complete.

In this case, with regard to the time billed by plaintiff's counsel prior to the preparation of the motion for attorneys' fees, the defendants suggest that the following hours should be excluded altogether:

| Date of Entry | Attorney | Entry | Time |
| --- | --- | --- | --- |
| 9/9/97 | MB–200 | Research re EEOC, ADA; telephone call to EEOC unit re law and procedure; memo re USERRA and disability | 2:24 |
| 9/12/97 | MB–200 | Telephone call to Dept. of Labor Veteran's Office re law and procedure under USERRA; research re veteran's rights; memo to file | 2:12 |

4. Defendants suggest that Dudley Gaffin, although a senior partner, should be compensated at a lower rate because he performed merely a supporting role in the case. The only case the defendants can cite in support of such a result is *Ramirez v. New York City Off-Track Betting,* 1997 WL 160369, 1997 U.S. Dist. LEXIS 4185 (S.D.N.Y. April 2, 1997), in which the court wrote: "Although Ms. Brown is a partner in the firm, the services she provided were largely in a supporting role and were more like the services usually performed by associates." *Id.* at *3, 1997 U.S. Dist. LEXIS 4185, *7. However, the services that Dudley Gaffin performed are not at all typical of services usually performed by associates. They included, *inter alia,* such tasks as the initial interview of the plaintiff, a review of the complaint and a subsequent meeting with Margaret Mayo and Mary Bruderlein to discuss it, status review and time spent strategizing how to move forward in the case and trial preparation, including editing of the opening and summation. *See* Pl.'s Ex. 1, attached to Pl.'s Not. Far from being tasks typical of junior associates, these are precisely the tasks a supervising attorney would undertake, requiring judgment and experience. If what the defendants mean to suggest is that Mr. Gaffin did not spend nearly as much time as Ms. Mayo working on the case, then this is a contingency clearly reflected in his total hours worked; his hourly rate should not be affected thereby.

| 9/26/97 | MB–200 | Research re complaints in Federal Court records room; telephone call to attorneys in USERRA cases | 2:00 |
|---|---|---|---|
| 9/29/97 | MB–200 | Telephone call with attorney in USERRA case re facts | :12 |
| 10/14/97 | MB–200 | Telephone call to EEOC New York re ADA procedure and law | :30 |
| 3/3/98 | MB–200 | Research and telephone call to Federal Court re initial conference and automatic discovery | :48 |
| 8/14/00 | CM–250 | Research re entry of judgment | 1:00 |
| 8/15/00 | CM–250 | Research re entry and form of judgment | 1:48 |

*See* Defs.' Mem. at 7–8. While, as plaintiff points out, these entries may represent a total of under eleven hours, only 2% of the total hours spent prior to the preparation of the fee request, *see* Pl.'s Repl. Mem. Law Supp. Mot. for Award of Attorneys Fees and Expenses [hereinafter "Pl.'s Reply"] at 1, the small percentage does not, unfortunately, absolve the court of the responsibility of reviewing the time for redundancy and waste.

■ Defendants' objections to these entries are that "plaintiff's counsel, who style themselves as experienced civil rights attorneys spent unnecessary time on such tasks as 'researching' the EEOC, telephoning the EEOC and the Department of Labor on matters of procedure, 'researching' complaints in the Court's records room and even researching the form for entering of judgment." Defs.' Mem. at 6–7. Defendants overlook, however, the fact that most of the entries to which they object include time spent researching USERRA, with which even the most experienced civil rights litigators are entitled to be unfamiliar. Thus, for example, the two hours spent on September 26, 1997 researching complaints in the federal court records room was also spent making telephone calls to attorneys in USERRA cases, a perfectly reasonable way to proceed given the notable lack of USERRA caselaw. Even the thirty minutes on October 14, 1997 spent researching the ADA is not an unreasonable expense given the fact that Fink's ADA claim was not a simple one. Fink claimed to have been regarded as hearing impaired within the meaning of the ADA and to have been discriminated against on that basis, whereas in actuality he did have a hearing deficit but not one severe enough to impede his job performance and no more severe than that of many other fire department personnel employed in similar positions and treated more favorably than he was.

■ The total of two hours and forty-eight minutes spent researching the entry and form of judgment was excessive, however. Plaintiff writes that this time was spent on "legal research and calculations regarding pre-verdict interest." *See* Pl.'s Not. at 15. But legal and factual issues concerning pre-verdict interest should be a relatively routine matter for plaintiff's counsel, considering their litigation experience. Also, it is not clear why plaintiff's counsel would have had to spend time researching the "form of judgment." Accordingly, the time spent on these tasks should be reduced to a total of thirty minutes. This time was spent by Christopher Morik, whose total will be reduced accordingly, from 33.8, *see* Pl.'s Not. at 24, to thirty-one hours.

Thus, subtracting out the time spent on preparing the motion for attorneys' fees,

which will be addressed separately below, the new tabulation of the total fee reimbursement is as follows:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Dudley Gaffin | 51.9 | $275.00 | $ 14,272.50 |
| Margaret H. Mayo | 333.0 | $275.00 | $ 91,575.00 |
| Christopher Morik | 27.1 | $225.00 | $ 6,097.50 |
| Mary Bruderlein | 149.6 | $150.00 | $ 22,440.00 |
| Total Lodestar not counting time spent preparing motion for attorneys' fees | | | $134,385.00 |

Defendants also object to the time spent by the plaintiff in preparation of the motion for attorneys' fees. The expenditures are itemized as follows:

| Date of Entry | Attorney | Entry | Time |
|---|---|---|---|
| 7/18/00 | CM–250 | Research attorney fees and motion for attorney's fees | :36 |
| 7/18/00 | DG–250 | Review correspondence to Court re pension; research application for attorney's fees | :18 |
| 7/19/00 | CM–250 | Continued research re: attorney's fees and motion | 1:00 |
| 7/19/00 | DG–350 | Review motion for counsel fees | :12 |
| 7/20/00 | CM–250 | Research re hourly rates for attorneys fees | 2:18 |
| 7/21/00 | MHM–350 | Research re legal fee standards | :24 |
| 10/10/00 | MHM–350 | Prepare notice of motion for attorney's fees, etc. | :06 |
| 11/20/00 | DG–350 | Legal research re counsel fees and counsel fees and draft of affidavit of services | 2:00 |
| 11/21/00 | MHM–350 | Draft affidavit of services | 10:48 |
| 11/22/00 | MHM–350 | Continued draft of affidavit of services | 1:30 |
| 11/22/00 | MHM–350 | Continued preparation of affidavit of services | 1:30 |
| 11/26/00 | MHM–350 | Review time records; draft memo of law and revise affidavit of legal services | 6:00 |
| 11/27/00 | MHM–350 | Revise affidavit; fax judgment and affidavit of services to DF | 5:00 |
| 11/28/00 | MHM–350 | Review judge's rules re motions; telephone call Corp Counsel (KF) re briefing schedule and letter to court re same; revise affidavit of services; edit memo of law | 3:54 |
| 11/29/00 | MHM–350 | Edit and finalize memo of law; affidavit of services and letter to court for courtesy copies; review expense records | 4:00 |

*See* Defs.' Mem. at 8–9. In addition, since plaintiff's counsel has expended further time in preparation of the reply to defendants' objections to their motion for attorneys' fees, these expenditures will be added to the list:

| Date of Entry | Attorney | Entry | Time |
|---|---|---|---|
| 1/08/2001 | MHM–350 | Review opposing papers on motion for attorney's fees | :12 |
| 1/10/2001 | MHM–350 | Prepare memo of law on motion for legal fees; legal research | 3:30 |
| 1/11/2001 | MHM–350 | Revise reply affidavit; review receipts for expenses; finalize memo of law on counsel fees | 3:18 |

*See* Repl. Aff. of Servs., Ex. 4.

■ In total, this represents forty-six hours and thirty-six minutes of time spent on the motion for attorneys' fees. Defendants content that experienced litigators with expertise handling civil rights cases should not have had to expend this much time in making this "relatively routine motion for attorneys fees." Defs.' Mem. at 7. Fink's counsel counters that the motion was not a relatively routine motion for attorneys' fees "just as this was not a relatively routine case. This was a relatively unusual and complicated case and the fee request so reflects." Pl.'s Reply at 2–3. Counsel expands:

> Plaintiff's counsel had to spend substantial time preparing plaintiff's instant application for attorneys fees and expenses, including legal research, drafting notice of motion, affidavit of legal services and memorandum of law, legal research and telephone conversations and/or correspondence with court and/or defendants' counsel regarding briefing schedule for motion and related matters.

Pl.'s Not. at 15.

Fink goes on to distinguish the two cases cited by defendant for the proposition that plaintiff's counsel's time spent in preparation of the motion for attorneys' fees was excessive, *Savino v. Computer Credit, Inc.*, 71 F.Supp.2d 173 (E.D.N.Y. 1999), where the court reduced the number of compensable hours from the claimed amount of forty to a total of five and *White v. White Rose Food*, 86 F.Supp.2d 77 (E.D.N.Y.2000), where the court reduced the number of compensable hours from sixty to fifteen. In *Savino*, Fink points out, the fee application in question was a second fee application prepared after the case had been remanded. *See Savino*, 71 F.Supp.2d at 178. The issue of fees had already been litigated. *See id.* In addition, the case was "a relatively routine" one which ended with the court's grant of plaintiff's motion for summary judgment. *See id.* at 177. *White*, too, "involved a routine dispute that eventually proceeded to a short non-jury trial consisting of four witnesses and approximately six hours of testimony." *White*, 86 F.Supp.2d at 81. By contrast, in *Fink*,

> there was a jury trial, with numerous witnesses and six days of trial. Furthermore, there was extensive pre-trial discovery, including review of over 17,-000 pages of documents produced by defendants and eight depositions. Plaintiff's counsel needed to and did describe this extensive work in its fee application, so as to enable the court to make a reasonable decision as to attorneys fees.

Pl.'s Reply at 4.

While Fink is correct to distinguish *Savino* as being inapplicable to this situation, where the attorneys' fees motion is being prepared for the first time, the distinction between this case and *White* is more dubious. Although it is true that this case

involved more complicated claims and a more extensive trial than in *White*, it is unclear how this would add twenty-six hours of legal fees,[5] involving, as it did, little more than some additional fact recitation, supplemented by exhibit citations where necessary. While plaintiff did have to spend time documenting and describing the extra work, the essence of the motion and underlying affidavit of services would remain unchanged. The actual memorandum of law in support of the motion for attorneys' fees totaled nine pages and involved only the most routine case citations for legal propositions that are somewhat less than mindbending. Compiling the log of hours submitted to the court was, in good part, clerical work. The nine page reply supplemented by some evidentiary exhibits should also not have taken seven hours to prepare.

In light of the fact that the attorneys' fees motion did require Fink's counsel to go through more material than the plaintiff did in *White*, the court is willing to approve an additional fifteen hours beyond what the court in *White* granted, which is more than generous, considering that it reflects a few more pages of summarization work. Thus, a total of thirty hours is approved in connection with the preparation of the attorneys' fees motion.[6]

Since the time being deducted is not being deducted from any one particular entry but rather from the hours as a whole, the question of what rate to bill these hours at arises. Of the time spent on the motion for attorneys' fees, of a total of forty-six hours and thirty-six minutes, three hours and fifty-hour minutes, or 8.37%, were Christopher Morik's time (senior associate time reimbursed at $225 per hour), two hours and thirty minutes, or 5.36%, were Dudley Gaffin's time (partner time reimbursed at $275 per hour) and the other forty hours and twelve minutes, or 86.27%, were Margaret Mayo's time (partner time reimbursed at $275 per hour). When the total time spent on the motion for attorneys' fees is reduced to thirty hours, 8.37% of that time, Christopher Morik's allotment, comes out to roughly[7] two hours and thirty minutes, which, at $225 per hour, totals $562.50. Dudley Gaffin's portion of the time, 5.36%, at a rate of $275 per hour, comes out to roughly one hour and thirty-six minutes, a total of $440.00. The rest of the thirty hours, Margaret Mayo's time, 86.27%, also at a rate of $275 per hour, comes out roughly to twenty-five hours and fifty-four minutes, or $7,122.50.

Adding these totals to the initial lodestar calculation, the following result is obtained:

| Attorney | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Dudley Gaffin | 53.5 | $275.00 | $ 14,712.50 |
| Margaret H. Mayo | 358.9 | $275.00 | $ 98,697.50 |
| Christopher Morik | 31.3 | $225.00 | $ 7,042.50 |
| Mary Bruderlein | 149.6 | $150.00 | $ 22,440.00 |
| | | TOTAL LODESTAR | $142,892.50 |

(3)

On top of the lodestar, the plaintiffs request a 75% enhancement to account for

---

5. The court in *White* awarded the plaintiff fees for fifteen hours of work. Plaintiff here claims over forty-six hours of work.

6. Candidly, the hours spent preparing the attorneys' fees motion should have been reduced to the same amount granted by the court in *White* in light of the fact that plaintiff's counsel made an unsupportable request for a 75% multiplier, *see* discussion in section (3) *infra*, which, had she researched the law diligently and omitted it, might have avoided motion practice on the attorneys' fees issue entirely and certainly would have saved both parties and the court a good deal of time. Her request is particularly surprising in light of her diligent and conscientious work at trial.

7. "Roughly" here means rounded to the nearest six-minute increment.

the risk of litigation, the fact that this case was taken on a partial contingency basis and the fact that the issues in the case were novel and complex. In support of this request, Fink cites two district court cases decided in 1981, one decided in 1990 and one from 1974. Unfortunately for the plaintiff, these cases have been mooted by subsequent law emanating from both the Supreme Court and from the Second Circuit. In *City of Burlington v. Dague*, 505 U.S. 557, 566, 112 S.Ct. 2638, 2643, 120 L.Ed.2d 449 (1992), the Supreme Court explicitly disallowed risk of loss and contingency arrangements as the basis for upward enhancements of attorney fee awards:

> We note at the outset that an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar. The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome and difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. Taking account of it again through lodestar enhancement amounts to double counting. The first factor (relative merits of the claim) is not reflected in the lodestar, but there are good reasons why it should play no part in the calculation of the award. It is, of course, a fact that always exists (no claim has a 100% chance of success), so that computation of the lodestar would never end the court's inquiry in contingent-fee cases.

*Id.* (citations omitted). The Supreme Court has also held that factors such as "the novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and cannot serve as independent bases for increasing the basic fee award. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

■ While multipliers are occasionally used in common fund class action cases in the Second Circuit, *see, e.g., Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electicite*, 970 F.Supp. 348 (S.D.N.Y. 1997), "[i]t is well settled in the Second Circuit that enhancements of the lodestar amount of attorneys' fees are not permissible under fee-shifting statutes." *Maywalt v. Parker and Parsley Petroleum Co.*, 864 F.Supp. 1422, 1435; *Anastacio v. Initial Contract Services, Inc.*, No. 97 Civ. 6695, 1998 WL 310767, at *1 (S.D.N.Y. June 12, 1998); *Amalgamated Clothing & Textile Workers Union v. Wal–Mart Stores*, No. 92 Civ. 5517, 1994 WL 74871, at *6 (S.D.N.Y. Mar. 7, 1994); *Dubin v. E.F. Hutton Group*, 845 F.Supp 1004, 1014 (S.D.N.Y.1994). The one instance that this court has found of lodestar enhancement in a fee-shifting case was in *Quinn v. Nassau County Police Dep't*, 75 F.Supp.2d 74 (E.D.N.Y.1999), where the court awarded a 10% enhancement for the risk of and groundbreaking nature of the litigation. *See id.* at 79 ("The Court also finds that an upward adjustment is appropriate, given the risks involved in bringing this action.") Notably absent from the discussion was any acknowledgment that the court had taken into account the Supreme Court's decision in *Dague, supra*, and the abundance of caselaw from within this circuit that notes the inappropriateness of fee enhancements for risk / contingency and novelty of the issues. Thus, *Quinn* is out of step with prevailing law, and accordingly,

no multiplier will be used in this case to enhance the lodestar fee award.

(4)

■ Finally, the defendants oppose certain costs claimed by Fink. Fink requests $135.08 as compensation for "Westlaw Legal Research." However, it is well-settled that "[c]omputer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *U.S. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996); *see also, U.S. ex rel Coughlin v. I.B.M. Corp.*, 992 F.Supp. 137, 145–46 (N.D.N.Y.1998) ("the cost of electronic computer research is not recoverable in a motion for attorney's fees and costs"); *Scanlon v. Kessler*, 1998 WL 726047 at *5 (S.D.N.Y. Oct. 14, 1998).

■ Fink requests reimbursement in the amount of $200.00 for subpoenas to witnesses Daniel Friedman and Thomas Von Esson, both of whom did not testify at trial. "There is a general presumption that only the costs of those witnesses who actually testify at trial may be shifted." *Merritt Meridian Const. Corp.*, 95 F.3d at 173. In his reply, the plaintiff does not even attempt to articulate a reason why the general presumption should not apply in this case. Hence, these costs are not recoverable.

Fink also requests reimbursement in the amount of $530.00 for service of subpoenas on trial witnesses on August 2, 2000, which, the defendants contend, were incurred after the conclusion of the trial and consequently not provided for by the local rules. *See* Defs.' Mem. at 15. In response, Fink provides documentation that the charges were actually incurred prior to the conclusion of the trial and were merely paid afterwards. As such, these costs are recoverable by the plaintiff.

■ Finally, Fink seeks recovery of $403.45 for the purchase of binders. Defendants contend that this is a routine office expense that is not taxable and should be excluded. *See* Defs.' Mem. at 15. The Second Circuit has written that "routine office overhead ... must be absorbed within the attorney's hourly rate." *Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933–34 (2d Cir.1987); *see also Lawson v. City of New York*, No. 99 Civ. 10393, 2000 WL 1617014 at *5 (Oct. 27, 2000). Fink, once again, makes no effort to defend the inclusion of this cost in his reply papers, and the court can find no reason to reimburse him for this expense.

Taking these rulings into account, Fink's current expense total of $3,615.50 is reduced to $2,876.97.

**Conclusion**

For the foregoing reasons, Fink is awarded a total of $142,892.50 (lodestar) + $2,876.97 (expenses) = $145,769.47 in attorneys' fees. The Clerk of the Court is directed to enter judgment accordingly.