Chantal MURRAY, By and Through her parents and natural guardians, and in their individual capacities, David B. MURRAY, and Djeanine Murray, Plaintiff,

v.

The Commissioner of the State of New York Department of Education Richard P. MILLS, The New York State Board of Regents, New York State Public High School Athletic Association, Valley Stream Central High School District Board of Trustees, Valley Stream Central High School District Memorial Junior High School Principal and Staff, and Valley Stream Central High School District Superintendent, Defendants.

No. CV–04–0961 ADS ETB.

United States District Court, E.D. New York.

Feb. 1, 2005.

Jason G. Parpas, Esq., Valley Stream, NY, for plaintiff.

Elliot Spitzer, Attorney General of the State of New York by Dorothy Oehler Nese, Esq., Assistant Attorney General, Mineola, NY, for the defendants the Commissioner of the State of New York Department of Education Richard P. Mills, the New York State Board of Regents, and the New York State Public High School Athletic Association.

Guercio & Guercio by John P. Sheahan, Esq., Farmingdale, NY, for the defendants Valley Stream Central High School District Board of Trustees, Valley Stream Central High School District Memorial Junior High School Principal and Staff, and Valley Stream Central High School District Superintendent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case Chantal Murray ("Chantal"), a minor, brought a Section 1983 Equal Protection action by and through her parents David and Djeanine Murray (collectively the "Plaintiffs") against the Valley Stream School District Board of Trustees and the Commissioner of the New York State Department of Education, among others, (collectively the "Defendants"). The Plaintiffs commenced the action and successfully obtained a temporary restraining order ("TRO"). Less than two months after issuance of the TRO the parties reached a settlement of the case. The Plaintiffs now seek attorney's fees for 1320.10 hours of work at $325 an hour plus $544.15 in costs for a total of $429,576.65 pursuant to 42 U.S.C. § 1988(b).

### I. *BACKGROUND*

On March 19, 2003, Chantal, a student at Valley Stream Memorial Junior High School, attempted to try-out for the school's baseball team. The school required Chantal to undergo a physical examination to determine her physical strength and fitness to participate on the baseball team. Male students who signed up for the baseball team were not required to undergo any physical examination for physical strength or fitness. On March 26, 2003, Chantal performed the female-qualification test and was informed that she failed because she did not complete a sufficient number of flexed arm hangs. The Plaintiffs appealed to the Superintendent of the School District and the Valley Stream Central High School District Review Panel. On April 3, 2003, the Plaintiffs were notified that Chantal's request had been denied. On May 2, 2003, the Plaintiffs commenced an appeal to the Commissioner of Education but did not receive a disposition.

On March 5, 2004, the Plaintiffs commenced this action by filing a complaint and moving for an order to show cause and a temporary restraining order against the Defendants. On March 8, 2004, after hearing argument on the order to show cause, the Court granted the Plaintiffs request for a temporary restraining order. The order permitted Chantal to be a member of the baseball team without having to pass a physical fitness test. On May 20, 2004, the parties reached a settlement that resolved the action by allowing Chantal to participate on the baseball team during her tenure in the school district. Pursuant to the terms of the settlement agreement, the Court retained jurisdiction for the purpose of enforcing the settlement, if necessary, and to determine the award of attorney's fees.

### II. *DISCUSSION*

#### A. *The Standards*

■ In response to the "American Rule," in which each party in a lawsuit ordinarily bears his own attorneys fees unless there is a contractual provision or an express statutory authorization, Congress enacted the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988 ("Section 1988"). Pursuant to 42 U.S.C. § 1988, a court has discretion to award a prevailing plaintiff attorney's fees and costs in an action under 42 U.S.C. § 1983. A plaintiff who is successful on at least one or more of his Section 1983 claims is entitled to such award. Successful resolution of a claim by way of a settlement agreement is sufficient to invoke prevailing party status if the agreement provides that the court shall retain jurisdiction and materially changes the position of the parties. *See Roberson v. Giuliani*, 346 F.3d 75, 84 (2d Cir.2003).

The Supreme Court set forth the rules for determining a prevailing party's fee in

the seminal case of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Hensley,* the Court stated that "the amount of the fee ... must be determined on the facts of each case." *Id.* at 429, 103 S.Ct. 1933. Two important `factors in the determination of a "reasonable" fee are the number of hours reasonably expended multiplied by a "reasonable" hourly rate. In this regard, in *Hensley* the Court stated:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Id.* at 433, 103 S.Ct. 1933.

Further, the Court stated that the district court should exclude from this initial fee calculation the hours that were not "reasonably expended," as follows:

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. *Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary,* just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary*

pursuant to statutory authority." *Copeland v. Marshall,* 641 F.2d 880, 891 (1980).

*Id.* at 434 (additional emphasis supplied).

However, the computation of reasonable hours multiplied by a reasonable rate "does not end the inquiry." *Id.* There are other factors for the district court to consider. An important factor is the "results obtained." *Id.* This factor is also discussed in *Hensley* as follows:

> This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* at 434, 103 S.Ct. 1933.

This partial success factor was further explained in *Hensley* and refined in subsequent Second Circuit cases. In *Hensley* it was explained:

> In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles,* 8 E.P.D. at 5049. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and there-

fore no fee may be awarded for services on the unsuccessful claim.

*Id.* at 434–35, 103 S.Ct. 1933.

In its determination of the compensation of the prevailing party attorney in regard to a partial success, the district court "may attempt to identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. 1933.

Finally, the Supreme Court in *Hensley* stated that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to the hours worked ... and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437, 103 S.Ct. 1933.

■ In summary the twelve factors that the Court must address in its determination of the proper prevailing attorney's fee are as follows:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933.

#### B. *Plaintiffs' Fee Application*

In his application for attorney's fees, Jason Parpas submitted a summary billing statement detailing the work performed for the Plaintiffs dating back to March 27, 2003, totaling 1,320.10 hours. Mr. Parpas now requests attorney's fees for 1320.10 hours at $325 an hour for a total of $429,032.50. Mr. Parpas did not submit any contemporaneous records of such work. Mr. Parpas states that the Plaintiffs entered into a formal written contract on April 1, 2003, wherein it was agreed that counsel would be compensated at a rate of $350 an hour. However, Mr. Parpas did not submit a copy of this agreement with his application. Mr. Parpas has not submitted a curriculum vitae or resume, but affirms that he is a solo practitioner; a Certified Public Accountant; that he graduated in the top 18% of his class from the Hofstra University School of Law; that he has been practicing law for five years; and that he has worked on civil litigation in both federal and state courts for plaintiffs and defendants. He seeks to be awarded the prevailing rate of $250 per hour, upwardly adjusted by an additional 30%, or $75, to reflect the increase in the consumer price index and inflation in the Eastern District since 1994.

In this case, the Defendants concede that Chantal is a prevailing party in this lawsuit by virtue of having received a TRO and injunctive relief, incorporated into a "so-ordered" stipulation of settlement that confirms that Court's continuing jurisdiction over this action. However, the Defendants opine that the application is grossly egregious and unreasonable. Defense counsel for the State concludes that Mr. Parpas' fee application is riddled with instances of questionable and duplicative, triplicate, and even quadruple billing, for performing the same or virtually the same tasks as were done in the course of representing the Plaintiffs during the administrative appeal and the federal litigation. Defense counsel notes that the entries in the 27 page billing statement merely dem-

onstrate his intimate familiarity with Roget's Thesaurus, as the records are replete with every conceivable synonym for the phrase "research case law" and "review and revise." Moreover, defense counsel further notes that the entries bear no relation to reality and demonstrate a fundamental lack of understanding about what constitutes effective use of an attorney's time and efforts. *See* State Dft's Memorandum in Opposition at p. 7.

Initially, the Court finds that the plaintiff is a prevailing party and is entitled to an award of his reasonable attorneys fees under 42 U.S.C. § 1988. Further, the Court notes that this was a fairly routine order to show cause. Whatever complex issues may have been present, if any, were quickly resolved once the settlement was reached.

### C. *Hourly Rate*

■ In making the initial lodestar calculation, the rate to be used must be the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir.1997) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). In 1998, the Second Circuit held that rates of $200 for partners, $135 for associates, and $50 for paralegals were reasonable rates for legal services in the Eastern District. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d. Cir.1998); *see also Luciano*, 109 F.3d at 111–12 (collecting cases); *Association for Retarded Citizens v. Thorne*, 68 F.3d 547, 554 (2d Cir.1995); *Cruz v. Local Union No. 3, Int'l. Brotherhood of Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir.1994); *Irish v. City of New York*, 2004 WL 444544 (S.D.N.Y.2004) ($250 per hour). The Court will apply the rates prevailing in the Eastern District community for similar services by lawyers of reasonably comparable skill, experience, and reputation in

making the initial lodestar calculation. *Polk v. New York State Dep't of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983) ("normally a district court awarding attorney's fees under Section 1983, will consider the prevailing rates in the district in which the court sits").

Following the rule set forth in *Savino*, some Eastern District Courts have applied this standard. *See Fink v. City of New York*, 154 F.Supp.2d 403, 407 (E.D.N.Y. 2001) (partners $200.00 to $250.00 and associates $100.00 to $200.00); *Schwartz v. Chan*, 142 F.Supp.2d 325 (E.D.N.Y.2001) ($175.00 per hour for a sole partner); *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine*, 2000 WL 130637, at *8 (E.D.N.Y.2000) ($225.00 per hour for partners and $100.00 per hour for associates); *Cush–Crawford v. Adchem Corp.*, 94 F.Supp.2d 294, 303 (E.D.N.Y.2000) aff'd 271 F.3d 352 (2d Cir.2001) ($200.00 for partners and $135.00 for associates); *Greenidge v. Mundo Shipping Corp.*, 60 F.Supp.2d 10, 13 (E.D.N.Y.1999) ($225.00 per hour for a senior partner and $150.00 per hour for her associate).

■ The size of the firm representing a plaintiff seeking attorney's fees may also be considered a factor in determining a reasonable attorney's fee, primarily due to lower overhead costs. *See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir.1989) (noting that the size of an attorney's firm is relevant in determining the relevant community's "prevailing market rates" and that "smaller firms may be subject to their own prevailing market rate"); *Reiter v. Metropolitan Transp. Authority of New York*, 2004 WL 2072369, at *7 (S.D.N.Y. 2004). Recent cases in the Eastern District of New York have held that $175.00 to $200.00 per hour is an appropriate rate for a solo practitioner. *See, e.g., Louima v. City of New York* 2004 WL 2359943, at

*89 (E.D.N.Y.2004); *Schwartz v. Chan,* 142 F.Supp.2d 325, 332 (E.D.N.Y.2001) (citing *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir.1998) (finding hourly rate of $175.00 reasonable)); *Walia v. Vivek Purmasir & Assocs., Inc.,* 160 F.Supp.2d 380, 382 (E.D.N.Y.2000) (finding hourly rate of $200.00 reasonable).

■ Mr. Parpas was the only attorney who handled this case. But it is unclear from the Plaintiffs' submissions whether Mr. Parpas has an established practice of law. Mr. Parpas has not submitted a resume but affirms that he has over 5 years of experience as an attorney working on civil litigation in both federal and state courts for both plaintiffs and defendants. However, upon investigation the Court has some concern regarding these claims. Mr. Parpas was admitted to practice as an attorney in New York in 2000 and brought this action four years later in 2004. Mr. Parpas claims to have worked on civil litigation in federal court, but apparently, the instant action is the only case in the Eastern District of New York in which Mr. Parpas has entered an appearance for a party. In addition, records reveal that Mr. Parpas was only admitted to the Southern District of New York on January 27, 2004.

Mr. Parpas' lack of experience also is evident in his hourly submission. Incredibly, he claims that he spent well in excess of 1000 hours on an order to show cause and temporary restraining order. An order to show cause and temporary restraining order by definition are time relevant proceedings and seek immediate relief. It follows that the Court should be concerned and wary with regard to an attorney that spends such an excessive amount of time preparing a routine request for a temporary restraining order and a preliminary injunction. In addition, Mr. Parpas readily admits in his request that some of his time was used to perform administrative tasks that would normally be performed by a paralegal or support staff. The Court also notes that, although counsel claims to have spent 150 hours on his application for attorney's fees alone—which time he expects to be compensated for—his application contains typographical mistakes, errors in grammar and punctuation, and is unnecessarily lengthy. For example, a summary of his point headings in the table of contents for his memorandum of law is three pages long.

In similar cases, courts have awarded associates with very little experience at rates of $100 to $135 per hour. *See Rotella v. Bd. of Educ. of the City of New York,* No. 01–0434, 2002 WL 59106, 2002 U.S. Dist. LEXIS 507 (E.D.N.Y.2002); *see also Hightower v. Nassau County Sheriff's Dept.,* 325 F.Supp.2d 199, 214, *vacated in part on other grounds,* 343 F.Supp.2d 191 (E.D.N.Y.2004); *Amato v. City of Saratoga Springs,* 991 F.Supp. 62, 67 (N.D.N.Y. 1998). Accordingly, after considering all the factors in *Hensley,* the facts and circumstances of this case and the experience of Jason Parpas, the Court fixes his hourly rate of compensation at $135.00. This amount reflects his limited federal litigation experience and the fact that some of the work could have been performed by a paralegal or administrative support personnel.

### D. *Were a Reasonable Number of Hours Billed?*

Having determined the reasonable hourly rate for Mr. Parpas, the Court now turns to the question of how many hours were reasonably expended by him. The standard in this regard was stated in *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998):

> The district court must thus examine the hours expended by counsel and the value of the work product of the particular

expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts.... In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties. *DiFilippo v. Morizio*, 759 F.2d 231, 235–36 (2d Cir.1985); *see, e.g. Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir.1997); *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992). If the court determines that certain claimed hours are "excessive, redundant, or otherwise unnecessary," *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40, the court should exclude those hours in its calculation of the lodestar.

*Gierlinger*, 160 F.3d at 876.

■ For an accurate determination of the hours reasonably expended it is necessary for the Court to examine contemporaneous billing records, time sheets or other documented, authentic, and reliable time records. *See Hensley* at 434, 103 S.Ct. 1933. The Supreme Court has instructed that "[h]ours that are not properly billed to one's client also are not billed to one's adversary." *Id.* The Court finds this instruction most helpful in this case.

The time records submitted by Mr. Parpas as annexed to his affidavit appear to be a review or compilation of the work he did. They do not appear to be contemporaneous records. While the compilations submitted by Mr. Parpas are certainly permitted in this type of application, it appears, with reasonable certainty, that the time records submitted by him were compiled for the purposes of this application.

Defense counsel for the State contends that the "sheer number of hours claimed by Plaintiffs' counsel are simply incredible." The Court finds that the records submitted by Mr. Parpas are not only incredible, but grossly excessive, redundant, and unnecessary. The Plaintiffs' billing statement may be divided into four parts: (1) the initial client consultations; (2) the preparation for and attendance at administrative proceedings; (3) the preparation for and attendance at federal court proceedings; and (4) the attorney's fee application. Putting aside the issue of whether the Plaintiffs are entitled to attorney's fees for work not related to the order to show cause, such as the administrative proceedings, each part of the billing statement is riddled with instances of unreasonable or unwarranted entries.

### 1. Initial Client Consultation

The hours billed by Mr. Parpas for client consultation are related to the Plaintiffs' claim but appear unreasonably excessive. For example, after his initial consultation on March 27, 2003, Mr. Parpas billed 5.20 hours on March 31, 2003 to read the entire New York State Public High School Athletic Association Handbook. On April 2, 2003, Mr. Parpas billed 8 hours researching the "school system structure" and determining the "hierarchy of school system." On April 7, 2003, Mr. Parpas billed an additional 8 hours while he "[a]nalyzed, recapitulated, summarized, digested, and recorded New York State Public High School Athletic Association Handbook regarding junior high school students applications to and for interscholastic athletic teams, baseball game guidelines, softball game guidelines, season length, mixed competition rules, and overall purpose and role of N.Y.S.P.H.A.A."

■ In sum, Mr. Parpas spent 6.5 hours consulting with the Plaintiffs, .4 hours on

the telephone with opposing counsel, and 52.9 hours researching the various "subject matter" before counsel commenced work on the administrative appeal. The Court finds that the 52 hours billed for research were unreasonable and excessive, and will only award 10 hours for research, 6.5 hours for consultations with the Plaintiffs, and .4 hours for time spent on the phone, for a total of 16.9 hours.

### 2. Administrative Proceedings

██ The Plaintiffs seek attorney's fees for work performed on the administrative appeal to the Commissioner of Education from April 24, 2003 until January 29, 2004. It is well-settled that generally, attorney's fees are not available for work performed in administrative proceedings. *Webb v. Board of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 241, 105 S.Ct. 1923, 1927–28, 85 L.Ed.2d 233 (1985); *Cullen v. Fliegner*, 18 F.3d 96, 105 (2d Cir.1994); *Vecchia v. Town of North Hempstead*, 927 F.Supp. 579, 581 (E.D.N.Y.1996). "Congress only authorized the district courts to allow the prevailing party a reasonable attorney's fee in an "action or proceeding to enforce [§ 1983]." *Webb*, 471 U.S. at 241, 105 S.Ct. 1923.

██ However, attorney's fees may also be awarded for work done in a prior administrative proceeding which "was both useful and of a type ordinarily necessary to advance" the subsequent civil rights litigation. *N. Carolina Dept. of Transp. v. Crest St. Community Council, Inc.*, 479 U.S. 6, 15, 107 S.Ct. 336, 341, 93 L.Ed.2d 188 (1986) (quotations omitted). In this case, the Plaintiffs Section 1983 claim did not require the Plaintiffs to obtain relief or exhaust their remedies through administrative proceedings. As the Defendants correctly assert, the Plaintiffs could have requested a stay of the administrative proceeding and sought immediate relief in state or federal court in 2003. Also, the

Plaintiffs' administrative appeal cannot be considered "useful" because the claim failed, which required the Plaintiff to seek redress in federal court. Although some of the issues researched for the administrative claim relate to the Plaintiff's constitutional violation, had the Plaintiff succeeded in the appeal before the State Commissioner the Section 1983 federal action would not have been necessary and the Plaintiffs would not have a claim for attorney's fees under Section 1988. The Court finds that the Plaintiff has failed to show how "the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Webb*, 471 U.S. at 243, 105 S.Ct. 1923. Therefore, it is unreasonable to award any fees for the hours billed for the administrative appeal from April 24, 2003 until January 29, 2004.

### 3. Federal Litigation

██ The first notation in Mr. Parpas' billing statement that contemplated a federal action occurred on January 24, 2004, when he billed 5.6 hours for reading "secondary sources regarding preliminary injunctions in general." For the next three weeks, until February 18, 2004, Mr. Parpas billed an astonishing 157 hours researching the law of preliminary injunctions.

From February 18, 2004, until the case was filed on March 5, 2004, Mr. Parpas spent a mind boggling 159 hours for multiple entries of work described in such terms as drafting, revising, rewording, rephrasing, reorganizing, researching, condensing, correcting, elaborating, reconciling, checking, ensuring the persuasiveness and cogency, ensuring the synchronous in contentions, and ensuring the cohesiveness of his various documents.

After the case was filed, counsel spent between 8 to 12.5 hours a day almost every day in March preparing for the case. Billing entries that were logged include preparing for oral argument, drafting discovery and motions, and researching a smorgasbord of legal topics. Attached to Mr. Parpas' billing statement is a list of 75 issues researched, including: bond requirements; public interest; Younger abstention; ancillary jurisdiction; preemption; contact sports of hockey, basketball and football rules; teen and adolescent growth patterns; review of medical text regarding growth, height, muscle percentage for boys and girls during junior high school; obesity; media coverage of women's achievements in sports; and the definition of the word "action." In total, Mr. Parpas is billing for 242.9 hours in the month of March after filing the case on March 5.

The month of April saw a resolution of the case and a continued pattern of unreasonable and excessive billing entries. On April 5, 2004, Mr. Parpas billed 7.6 hours for a Court appearance, oral argument before Judge Spatt and settlement negotiations with the defendants' counsel. The Defendants contend that these proceedings only took 3 hours. On April 28, 2004, Mr. Parpas billed 5.3 hours for a conference with Magistrate Judge E. Thomas Boyle, while the Defendants argue the conference only took 3 hours.

In light of the grossly unreasonable and largely excessive billing entries of 1320.10 hours, the hourly submission by Mr. Parpas is deemed totally unreliable. The Court will now consider other factors, such as the Defendants' offer of attorneys fees and the amount awarded in a similar case, in deciding what the reasonable hours expended should be for this case.

The State Defendants diligently proposed a revised billing statement. Counsel for the State Defendants reviewed each entry in the Plaintiffs' 25 page billing summary and marked each statement of work with a reasonable amount of hours. The Defendants reasonable hourly total was 233.5 hours of work.

A similar case, *Rotella v. Bd. of Educ. of the City of New York*, No. 01–0434, 2002 WL 59106, 2002 U.S. Dist. LEXIS 507 (E.D.N.Y.2002), is very instructive regarding the reasonable amount of hours. In *Rotella*, the plaintiffs' case lasted approximately six months from inception to settlement and encompassed a one-day hearing on a motion for a TRO and a two-day hearing on a preliminary injunction. The case was settled shortly after the hearing. In that case, the plaintiffs' three attorneys billed approximately 145 hours for work leading up to and including the two-day preliminary injunction hearing. The court examined the billing records and found numerous instances of duplicative and excessive hours billed, unnecessary work performed, advancing legal arguments on issues that were not in dispute, paralegal administrative work performed by attorneys, and multiple instances of redrafting to the same documents. *Id.* The court decided to reduce the hours claimed by the attorneys by 30% for one of the associates. *Id.* at 2002 WL 59106, *2, 2002 U.S. Dist. LEXIS 507, *10. In it decision, the court awarded approximately 115 hours for the work performed up to and including the preliminary injunction hearing.

The Court agrees with the reasoning and determination set forth in *Rotella*. The commencement of a routine Section 1983 action with a complaint, order to show cause, and temporary restraining order should not take an attorney more than 100 hours of work. In making this determination, the Court notes that this amount is in line with other cases that lasted much longer than three months. *See, e.g., Morris v. Eversley*, 343 F.Supp.2d 234, 248

(S.D.N.Y.2004) (finding 712 hours reasonable for a case that lasted two years and ended with a trial); *Hightower,* 325 F.Supp.2d at 217 (finding 437 hours reasonable for a case that lasted over three years and ended with a trial); *Elliott v. Bd. of Educ. of Rochester City Sch. Dist.* 295 F.Supp.2d 282, 286 (W.D.N.Y.2003) (finding 135 hours reasonable for a case that lasted one year before it settled). Accordingly, the Court finds that 125 hours is a more than reasonable number of hours to expend on the federal litigation stage of this case.

#### 4. Application for Attorney's Fees

The Court recognizes the Plaintiffs' right to bill for time spent applying for fees and costs. *See Fink v. City of New York,* 154 F.Supp.2d 403, 412 (E.D.N.Y.2001). However, the Court finds that the 150 hours Mr. Parpas is requesting for his fee application is grossly amplified. Other cases in this district have found that a reasonable amount of hours to award for compiling a motion for attorneys fees in a routine case to be 5 to 15 hours. *See White v. White Rose Food,* 86 F.Supp.2d 77 (E.D.N.Y.2000); *Savino v. Computer Credit, Inc.,* 71 F.Supp.2d 173 (E.D.N.Y.1999) (reducing the number of compensable hours from the claimed amount of forty to a total of five). A more complex cases that involved a six-day jury trial, eight depositions, and 17,000 pages of documents awarded a generous 30 hours for the motion for attorney's fees. *See Fink,* 154 F.Supp.2d at 412.

In this case, the Plaintiffs' motion for attorney's fees is a routine motion that consists of an affidavit, memorandum of law, a billing statement, a letter from an attorney on the hourly rate that his law office charges, and print-outs of internet pages regarding the consumer price index. However, the Plaintiff unnecessarily devoted five pages of his memorandum of law arguing that the prevailing rate in the Eastern District should be increased by 30% to compensate for the increase in the consumer price index and inflation. Also, the billing statement contains numerous instances of excessive and unreasonable billing, such as: 4.5 hours to Shepardize case law; 9.5 hours recording cases and formulating arguments; 4 hours preparing for a settlement conference; and 7.5 hours organizing, clarifying, editing, and *amplifying* billing records regarding work done on subject action. In light of the routine nature of this case, the Court finds that a reasonable amount of hours to spend on this motion is 15 hours.

#### E. *Costs*

The plaintiffs are entitled, under the provisions of 42 U.S.C. § 1988, to reimbursement for the reasonable costs incurred in pursuing the litigation, although payment is not permitted for items which constitute routine office overhead. *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998). The Second Circuit has held that reasonable identifiable out-of-pocket disbursements, which are ordinarily charged to clients, are recoverable. *See United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989); *see also Kuzma v. Internal Revenue Service,* 821 F.2d 930, 933–34 (2d Cir.1987) (providing a non-exclusive list of recoverable costs including photocopying, travel and telephone costs).

The Plaintiff requests a total of $544.15 in costs, which consists of $23.70 for postage, $200.00 for photocopying, $170 in court fees, and $150.45 for travel costs. The Court agrees that these were reasonable costs incurred in pursuing the litigation.

### III. *CONCLUSION*

The Court now calculates the fees to be awarded to Plaintiffs' counsel Jason G. Parpas.

156.9 hours @ $135 per hour = $21,181.50
Costs                              $   544.15
Total Fees and Costs          $21,725.65

**SO ORDERED.**